JAMES M. STEPHENS et al., Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. **ATTORNEY AND CLIENT: Attorney's Lien: Client's Settlement after Judgment: Fraud.** This is a proceeding to enforce an attorney's lien for one-third of a judgment recovered in the circuit court by the attorney's client against the defendant railway company, and incidentally, for the purposes of the lien, to set aside a satisfaction of the judgment pending on appeal on the ground that the compromise and satisfaction were procured by defendant's fraudulent practices toward the client. *Held*, that, if the client is satisfied with his settlement, his attorneys have no cause to attack the settlement in the absence

of either allegation or proof that their client in agreeing to the compromise was actuated by a fraudulent design, and participated in fraudulent practices against the lien rights of his lawyers.

2. ———: ———: **Appeal: Final Judgment.** Where the litigation is ended and the client has secured a final judgment against a defendant of unquestionable solvency, the attorney's fees should be measured by the judgment, and the client could not impair the fee by an improvident statement, but where the litigation is not ended, and the judgment secured by client is pending on what may be termed a live appeal, the client's right to compromise is paramount.

3. ———: ———: **Right of Client to Settle: Proof.** Although an attorney's lien can not be defeated by a clandestine settlement of his client, nevertheless if such settlement be honestly made it determines the amount of his fee, and the lien securing it, and the fact that the settlement is made by the client without the advice or consent of the attorney, of itself, will not support an inference that the client acted in bad faith towards his attorney.

4. ———: ———: **Settlement by Intoxicated Client.** The fact that a client made a settlement when so intoxicated that he was "below par mentally" but was *compos mentis* and qualified to transact business, did not put his attorneys in a position to complain, when he subsequently ratified the settlement when sober by keeping the money. The defense of drunkenness is a personal one.

5. ———. Where the only fraud of which attorneys complain is fraud practiced against their client which he afterwards condoned, whereas the only fraud of which the law would permit them to complain would have been fraud practiced against them by their client, the attorneys are bound by their client's settlement to the extent of fixing the amount of the fee they are entitled to receive.

Appeal from the Jackson Circuit Court.—*Hon. E. E. Porterfield, Judge.*

REVERSED AND REMANDED (*with directions*).

*John H. Lucas* and *Piatt & Lee* for appellant.

(1) (a) The Attorney's Lien Law, sections 964-65, R. S. Mo., 1909, does not vest in the attorney a

property right in his client's cause of action, but merely gives him a lien on the proceeds thereof to insure the payment of his fee for services. Laughlin v. Powder Co., 134 S. W. 116; Hurr v. Railroad, 141 Mo. App. 217; O'Connor v. Transit Co., 198 Mo. 622, 641-642; Curtis v. Railroad, 118 Mo. App. 352; Curtis v. Railroad, 125 Mo. App. 369; Waite v. Railroad, 204 Mo. 502; Boyle v. Railroad, 134 Mo. App. 71; Boyd v. Mercantile Co., 135 Mo. App. 115; Abbott et al. v. Railroad, 138 Mo. App. 530. (b) James M. Stephens was the sole owner of his cause of action and had the absolute right to settle his case on such terms as he chose at any stage of the proceedings. (c) A contingent fee for services of an attorney is liquidated as to the amount thereof by the final settlement actually made by or for his client and such settlement makes the attorney a creditor of his client. Hurr v. Railroad, 141 Mo. App. 222, and cases there cited. (2) In the absence of fraud by the client in the settling of his cause of action, the settlement is conclusive as a basis for determining his attorney's contingent fee. Tate v. Railroad, 131 Mo. App. 107; Hurr v. Railroad, 141 Mo. App. 217, and cases cited; Laughlin v. Powder Co., 134 S. W. 116. (3) (a) Respondents being creditors of their client, James M. Stephens, cannot complain of the fraud, if any, practiced on him, their debtor, by defendant, even though the effect thereof would be to diminish his liquidated assets Parker v. Roberts, 116 Mo. 657; Colbern v. Robinson, 80 Mo. 541; Distilling Company v. Ellis, 63 Mo. App. 17; Ready v. Smith, 170 Mo. 163; Webb v. Rockefeller, 195 Mo. 57. (b) A creditor cannot avail himself of a claim that his debtor was induced to convey or mortgage his property or settle a suit through duress, administration of drugs, or intoxicants or on account of imbecility, such defense is personal to the debtor alone. Parker v. Roberts, 116 Mo. 662; Distilling Company v. Ellis, 63 Mo. App. 17; Eaton, Adm., v. Perry, 29

Mo. 96. (4) Respondents' claim of a *quantum meruit* and a written contract in same count is inconsistent and repugnant, and being so he cannot maintain this action. Attorney's Lien, sec. 964-5, R. S. 1909; Rinard v. Railroad, 164 Mo. 284; Mansfield v. Bank, 74 Mo. App. 202; Soap Works v. Sayers, 51 Mo. App. 314. (5) Respondents' alleged written contract is invalid because it authorizes them to sue whomsoever they please and because they allege their client at no time, possessed sufficient mental capacity to make a contract. (a) See movers' motion, paragraph 4, alleges total destruction of cilent's capacity for recollection and continuity of thought. (b) See paragraph 2 of contract. (6) The jury should have been discharged for misconduct and improper argument of counsel for respondent during the progress of the trial. Neff v. City of Cameron, 213 Mo. 369; Haynes v. Town of Trenton, 108 Mo. 133; Tuck v. Traction Company, 140 Mo. App. 355; Torreyson v. Railroad, 129 S. W. 409; Epstein v. Railroad, 197 Mo. 738. (7) Defendant's motion for judgment on the pleadings should have been sustained and request for verdict in the sum of four hundred forty-one and sixty-seven one-hundredths dollars should have been given. Hurr v. Railroad, supra, and cases cited. (8) It was error to permit the introduction of evidence as to the nature, character and extent of James M. Stephens' injuries. (9) The court below did not have jurisdiction to entertain respondents' motion while the appeal was pending in this court. R. S. 1909, sec. 2038; In re Bledsoe Hill, 222 Mo. 609.

*Frank P. Sebree, A. L. Cooper* and *Scarritt, Scarritt & Jones* for respondents.

JOHNSON, J.—This is a proceeding to enforce an attorney's lien for one-third of a judgment recovered by James M. Stephens against the defendant rail-

way company and, incidentally, for the purposes of the lien, to set aside a satisfaction of the judgment entered of record by Stephens, on the ground that the compromise and satisfaction of the judgment were procured by fraudulent practices of defendant. Chronologically stated the facts of the case are as follows:

On December 25, 1907, Stephens was severely injured in a collision between one of defendant's street cars and a wagon in which he was riding and, claiming that his injuries were caused by the negligence of defendant, his wife, acting as his agent, entered into a written contract in his behalf with the respondent attorneys by the terms whereof the attorneys were engaged to institute and prosecute an action against defendant for damages. Afterward Stephens signed the contract which *inter alia* contained the following stipulations:

"And it is agreed that the said firm shall receive as full payment of their services in this employment one-third of the full amount recovered or collected, whether by suit, judicial process or by compromise settlement on account of the claims of either of said persons arising out of the said injuries. It is understood and agreed that no compromise will be made of the claims of either of the said persons except upon the advice of said attorneys."

Pursuant to this contract the attorneys commenced the present suit January 30, 1908. The petition stated a cause of action founded on negligence of defendant in causing the injuries of plaintiff in the collision. February 3, 1908, the attorneys served on defendant a notice in writing of their lien in which it was stated "that the said James M. Stephens and Lizzie Mae Stephens have agreed with the undersigned firm that the said firm shall receive as full payment of their services in said employment one-third of the full amount recovered or collected, whether by suit, judicial process, or by compromise settlement of their said

claim or cause of action either before the institution of suit or action, or at any stage of the institution of suit or action.''

· Answer was filed and a trial of the issues before a jury resulted in a verdict and judgment rendered February 2, 1909, for plaintiff, in the sum of $3750. An appeal to this court was allowed defendant March 29, 1909, and an order was entered giving defendant leave to file bill of exceptions on or before October 9, 1909. The appeal was not perfected nor was a bill of exceptions filed for the reason that on July 27, 1909, plaintiff and defendant, without the knowledge or consent of plaintiff's attorneys, compromised and settled the judgment under the terms of a written contract duly executed by plaintiff as follows:

"Know all men by these presents, That I, James M. Stephens, of Kansas City, Missouri, for the sole consideration of the sum of one thousand three hundred twenty-five and no one-hundredths dollars to me paid by the Metropolitan Street Railway Company; the receipt of which is hereby acknowledged, do hereby release and forever discharge said Metropolitan Street Railway Company, its successors and assigns, from all actions, causes of actions, suits, controversies, claims and demands whatsoever for or on account of injuries received to the person or damages caused to the property of the signer hereof, or either of them, and especially on or about the 25th day of December, 1907, on the Fifteenth street line near Fifteenth and Woodland avenue in Kansas City, Missouri, and being more fully described in the petition filed in case of James M. Stephens v. Metropolitan St. Ry. Co., No. 35829, in Jackson County Circuit Court, and being in full satisfaction of the judgment rendered therein in favor of plaintiff against defendant for $3750, February 12, 1909, and recorded in Book 700, page 578, in said court records.

"It is expressly understood and agreed that said sum of one thousand three hundred twenty-five and no one-hundredths dollars is the sole consideration of this release and the consideration stated herein is contractual; and is not a mere recital; and all agreements and understandings between the parties are embodied and expressed herein."

On signing the contract and entering satisfaction of the judgment of record plaintiff received from defendant the consideration stated in the contract and retained it all, paying his lawyers nothing.

December 18, 1909, the attorneys of plaintiff began the present proceedings by filing a motion in the case of their client in which they alleged:

"These attorneys beg leave to refer the court to the pleadings and proof adduced in this case relative to the extent of the injuries received by the plaintiff and for which damages were sought to be recovered, and state that the injury received by the plaintiff consisted of a fracture of the skull and concussion of the brain, whereby he was rendered utterly unconscious and so remained for many days, and whereby his mental powers were permanently impaired and injured to such an extent that he became largely incapacitated for labor and for performing the usual avocations of life, and whereby his capacity for continuity of thought and recollection were entirely taken away, and his powers of sight and hearing greatly diminished; that by reason of the impaired mental condition of the plaintiff the defendant, through its claim agents and servants, the names of whom are to the movers herein unknown took advantage of the plaintiff and by corrupt and evil practices, consisting of misrepresentation of existing facts, false statements as to the fidelity of the plaintiff's attorneys, and by the use of intoxicating liquors continued through many days, overcame the plaintiff's capacity to reason and decide, and obtained and procured his signature to what pur-

ports to be an agreement of settlement of the said claim and judgment, and at the same time paid to the said James M. Stephens the sum of $1325 as an alleged consideration for such settlement and release, although these movers state and show to the court that the defendant had theretofore offered both to them and to said Stephens on more than one occasion the sum of $3000 in settlement of said judgment.

These movers show and state to the court that the amount paid to the said Stephens as aforesaid is an inadequate consideration for the release and discharge of the said judgment, and that the alleged release was obtained by the unconscionable advantage and fraudulent conduct of the defendant as heretofore stated; that the movers herein have received no compensation for their services rendered to said Stephens as aforesaid, and that the defendant has failed and refused to pay for the said services, although thereunto requested; that the reasonable value of the services rendered by them as aforesaid is $1250, and that they are entitled to a lien for that sum on the judgment heretofore rendered in this case.''

The prayer of the motion was that the court ''set aside the satisfaction of the judgment heretofore entered in this cause to the extent of the movers' lien and right therein, that is to say to the extent of $1250, and to award them an extension thereon to the extent of said lien, and that they may have the benefit of the lien and remedies belonging to attorneys and counselors at law in respect to the said claim and judgment as is provided by law.''

In answer to this motion defendant offered to pay into court the sum of $431.70 in full satisfaction of the attorneys' lien. Various motions were filed by defendant, among them one for judgment on the pleadings, but all were overruled and defendant filed an answer interposing a number of defenses. The issues raised by the motion and answer were tried February

3, 1910, before a jury. Special issues of fact were submitted to the jury and answered as follows:

"1. Was the mental condition of James M. Stephens such on July 27, 1909, as to render him easily subject to over-persuasion and to be unduly influenced by the misrepresentations and the importunities of others? Answer. Yes.

2. Were the mind and memory of James M. Stephens sufficiently sound at the time of the alleged compromise settlement, viz.: July 27, 1909, to enable him to know and understand the alleged transaction of settling and satisfying the judgment in his suit against the Metropolitan Street Railway Company. Answer. Yes.

3. Do you believe from the evidence that the Metropolitan Street Railway Company through its agents exercised an undue influence over James M. Stephens, which amounted to over-persuasion and destroyed the free agency and will power of the said Stephens, and thereby caused him to acknowledge satisfaction of his judgment of $3750 against said company for $1325 on or about July 27, 1909? Answer. Yes.

4. Was the alleged settlement between James M. Stephens and the Metropolitan Street Railway Company of July 27, 1909, procured by misrepresentation and the use of liquors by the Metropolitan Street Railway Company, or its agents, to and upon the said Stephens, which amounted to over-persuasion of the said James M. Stephens, and a supression of his will power, in his then mental condition. Answer. Yes."

On these findings the court, on February 4, 1910, rendered the following judgment:

"The court having heard all of the evidence so adduced and arguments of counsel and being fully advised in the premises doth adopt and approve the said findings and verdict and does further find that the facts stated in the said motion are true, and that the

complainants in the said motion are entitled to the relief prayed for.

"Wherefore it is considered, ordered and adjudged that the complainants in said action are entitled to and own and have a lien in and upon the certain verdict and judgment for the sum of $3750 and interest, rendered and entered by the Circuit Court of Jackson County, Missouri, on or about February 12, 1909, in the said cause of James M. Stephens v. Metropolitan Street Railway Company, recorded in volume 700 at page 578 of the records of said court for their compensation as attorneys and counselors in said cause, to the extent of one-third of the value of said verdict and judgment, and have an interest therein to the extent of one-third thereof, and that the purported acknowledgment of satisfaction and release of the said verdict and judgment by James M. Stephens upon the margin thereof be and the same is hereby cancelled, set aside and annulled to the extent of the lien and interest of the complainants in said motion as hereinbefore stated, and that the purported settlement and release of the said verdict and judgment between the said defendant and James M. Stephens on or about July 27, 1909, be and the same is hereby cancelled, set aside and annulled to the extent of the lien and interest of the complainants in said motion as hereinbefore stated.

"And it is further ordered that because it appears from the proof the appeal allowed by this court to the defendant in the said cause of James M. Stephens v. Metropolitan Street Railway Company, has not yet been lodged in or disposed of by the Kansas City Court of Appeals, although the time allowed by law to the said appellant for so doing has expired, this cause is continued and the court reserves jurisdiction hereof for further orders in order that the complainants in said motion may, if they so desire, take appropriate proceedings to bring the said appeal to the attention

of the Kansas City Court of Appeals for disposition.''

Within four days thereafter defendant filed motions for a new trial and in arrest of judgment which were overruled and on February 19, 1910, defendant filed affidavit for appeal and an appeal was allowed to this court.

As stated above no steps were taken by defendant to perfect its appeal taken from the original judgment and on March 5, 1910, this court dismissed the appeal. April 2, 1910, the respondent attorneys presented the order of this court dismissing the appeal to the circuit court and the court made a decree setting aside the order of appeal entered on February 19th on the ground that the order was improvidently made and again it was adjudged that the respondent attorneys' lien was one-third of the judgment and that for the purpose of enforcing the lien the satisfaction of the judgment must be set aside, etc. Defendant did not refile its motions for a new trial and in arrest but did file another affidavit for appeal and the appeal was allowed. All of these proceedings were had at the term at which the issues raised by the motion of respondent attorneys were tried.

A careful reading of the evidence convinces us that the jury correctly solved the issues of fact submitted to them. A claim agent laid siege to plaintiff and by his blandishments and attentions ingratiated himself and finally, by getting plaintiff drunk, succeeded in inducing him to compromise and settle the judgment of $3750 for $1325. Plaintiff went with the claim agent to the offices of defendant's legal department and remained there until the contracts were prepared and signed and he received his pay. Accompanied by one of defendant's lawyers he went to the courthouse, and satisfied the record. In a drunken way he knew what he was doing and except for his intoxication we think that while mentally he was as one

witness said "below par" he was *compos mentis* and qualified to transact business.

We shall not go into the subject of the nature and extent of his wrongs received at the hands of defendant's agents and attorneys for reasons that will become apparent. We shall assume for argument that plaintiff was defrauded by defendant into compromising the case and releasing the judgment and that he would be entitled to relief if he were seeking the cancellation of the contract. But so far as these proceedings are concerned plaintiff, satisfied with his settlement, has ratified it by retaining its proceeds without complaint for nearly two years. Philip sober has approved the act of Philip drunk, and the real question we are called on to decide is whether the respondent attorneys (their client being satisfied with what he did), have any cause to attack the settlement in the absence of either allegation or proof that their client in agreeing to the compromise, was actuated by a fraudulent design and participated in fraudulent practices against the lien rights of his lawyers.

The attorneys' lien statutes upon which this proceeding is founded have been considered by the courts of last resort in this state in a number of recent cases of which the following are the most useful in the solution of the issues now before us: Laughlin v. Powder Co., 134 S. W. 116; Hurr v. Ry. Co., 141 Mo. App. 217; O'Connor v. Transit Co., 198 Mo. 622; Curtis v. Railway, 118 Mo. App. l. c. 352, 125 Mo. App. 369; Wait v. Railroad, 204 Mo. 491; Boyle v. Railway, 134 Mo. App. 71; Boyd v. Mer. Co., 135 Mo. App. 115; Abbott v. Railroad, 138 Mo. App. 530; Yonge v. Transit Co., 109 Mo. App. 235; Young v. Renshaw, 102 Mo. App. 173.

The interpretation of the law expressed in these cases is declarative of the following rules: An attorney may contract with his client on a contingent fee basis and on giving written notice of the contract

to the adverse party shall have a lien for the security of his fee on his client's cause of action which lien will attach to any judgment rendered for the client and to the proceeds of the cause or judgment, however realized. But the cause or the judgment into which it merges remain to the end the sole property of the client and the only interest the attorney can have in it is that of a charge or lien upon it for the security of the payment of his fee. As long as he acts in good faith towards his attorney the client may exercise his own judgment in the prosecution of the action or in the compromise and settlement thereof during its pendency and the attorney will be bound to accept the results of such action though it be had without his knowledge and consent. His lien cannot be defeated by a clandestine settlement of his client but if such settlement be honestly made it determines the amount of his fee and the lien securing it. The fact that the settlement is made by the client without the advice or consent of the attorney, of itself, will not support an inference that the client acted in bad faith towards his attorney. Their relationship is analagous to that of principal and agent; the subject-matter is the property of the client, and as long as the client manifests no purpose of making a settlement to defraud the lawyer of the whole or a part of his fee and lien the client should not be restricted in the exercise of the right the law gives him of making what he considers to be an advantageous settlement of his case. Where the litigation is ended and the client has secured a final judgment against a defendant of unquestionable solvency, the attorney's fees should be measured by the judgment and the client could not impair the fee by an improvident settlement, but where the litigation is not ended and the judgment secured by the client is pending on what may be termed a live appeal, the client's right to compromise is paramount.

In the case in hand an appeal had been allowed defendant to this court and, at the time of the settlement, no necessary step had been omitted in perfecting the appeal. We cannot say the settlement made by plaintiff, on its face, was improvident. A reasonable person in his situation would have taken into account the vicissitudes and uncertainties of litigation, the delays and annoyances and his own immediate necessities. Though the settlement contract as between plaintiff and defendant absolved defendant from any obligation to pay the fee of plaintiff's attorneys, both parties must have known that the attorneys would force defendant to pay the fee if their client did not pay it and as he did not, the cost of the settlement to defendant will about equal fifty per cent of the judgment. Under such circumstances the bargain made by plaintiff while drunk does not appear to have been a bad one and his subsequent sober ratification, by keeping its fruits without complaint, give it full validity. His attorneys are in no position to complain: "The defense of drunkenness like that of infancy, duress, imbecility, etc., is a personal one, and if the party whose interest is affected by a contract made when drunk chooses to abide by it when sober, third persons are not permitted to interpose." [Parker v. Roberts, 116 Mo. l. c. 662, and cases cited.]

The only fraud of which the attorneys complain is fraud practiced against their client which he afterward condoned; the only fraud of which the law would permit them to complain would have been fraud practiced against them by their client. We conclude, on this branch of the case, that the attorneys are bound by the settlement to the extent of fixing the amount of the fee they are entitled to receive. Their fee, which, as we hold, defendant must pay, is one-third of $1325, together with interest from date of the settlement.

But it is argued by the respondent attorneys that the judgment must be affirmed, since no exceptions were saved by any proper motion for new trial to any alleged errors during the trial. The point is that the motion for a new trial was not refiled after the court set aside the first order of appeal and rendered judgment anew, and that the motion filed in four days after the verdict was premature and cannot be considered. [Citing Werckmann v. Taylor, 112 Mo. App. 365; City v. Boyce, 130 Mo. 572.]

It sufficiently answers this point to say that should we reject the bill of exceptions the error in the judgment still appears on the face of the record proper. The allegations of the petition show affirmatively that respondents are not entitled to set aside the satisfaction of the judgment on the ground of fraud but only to the extent of preserving the judgment as a security for their fee and that they are not entitled to a fee of one-third of the judgment but to one equal to one-third of the proceeds of the settlement made by plaintiff. A number of technical questions are urged by counsel for defendants in their briefs but we answer them all by saying that the form of the proceeding is sanctioned by this court and the Supreme Court in the cases we have cited and that the action initiated by the motion of respondent should be regarded as engrafted on the original action for the purpose of enforcing the lien. We find the cause pleaded in the motion is founded on contract; that averments of the motion are not repugnant, and that the motion which was not filed until after the satisfaction of the judgment was not premature because the appeal had not been formally dismissed in this court. The compromise of the case and satisfaction of the judgment were all that was necessary to give respondents a cause of action for the enforcement of their lien.

The tender of judgment filed by defendant we find insufficient to cast the costs of the proceedings on re-

spondents for the reason, if for no other, that it fell short of tendering the full amount of the fee.

The judgment is reversed and the cause remanded with directions to enter judgment for respondents for $441.67 with interest from the date of the settlement, for the costs of the proceedings and to adjudge and decree that said judgment be enforced as a lien against the judgment recovered by plaintiff and that the satisfaction of said judgment be set aside to the extent required for the enforcement of the lien.

All concur.